The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Amy C. Lannard presiding. Good afternoon. We are taking up case number 4240533, Dontell Dion Crowder v. McLean County, Illinois, McLean County Sheriff, Dr. Hughes Lockard and Suzanne Scott are in. And counsel for the appellant, if you'll please state your name for the record. Walter Anderson for the appellant, Dontell Dion Crowder. And I know we have two attorneys for the appellees, but I will start with Mr. Janneton. Good afternoon, Your Honor. Peter Janneton for defendant appellee, Dr. Lockard. Mr. Gersh, if you'll please enter your appearance. Good afternoon, Your Honor. Andrew Gersh, I'm here on behalf of the county, the sheriff and nurse, Suzanne Scott. Thank you. And counsel for the appellant, you may proceed with argument. Thank you. Judge, may I please report? Considering that I am, there's several defendants and several issues that I would like to get to, I thought it would be best to give the court sort of a roadmap of where I'm going here today. First, I would like to address the summary judgment in favor of Dr. Lockard and possibly the motion to dismiss, then move to the summary judgment in favor of the county defendants and namely Nurse Scott, and then the motion to dismiss there. And then lastly, address any with the county sheriff. So to start, F3, 213 F3 disclosure basically has three components to it. That the, I have to disclose the subject matter on which the witness will testify, the conclusions and opinions of the witness and the basis is therefore, and the qualifications of the witness and any reports they may have prepared. It was the 213 disclosures that were attached to both to Dr. Lockhart's motion for summary judgment. To reach the, in his motion for summary judgment, basically what he was saying was, Lisa, what I understood the argument to be was that the 213 disclosure was not in compliance with rule 213 F, F3, excuse me, because the disclosure was too vague. At one point, I can quote directly from his motion for summary judgment. He says plaintiff discloses that Dr. Morelli will testify that mere comprehensive physical exam plaintiff's need should, and that's in quotation marks, should have been performed, but entirely fails to indicate that such an examination was required by the standard of care and entirely fails to indicate what exactly the applicable standard of care required. Um, well, first this, as I pointed out to the lower court before, and I pointed out to this court in my brief, that's just simply not what happened here. Defending Lockhart just takes the word should out of context, and then just uses it to imply that my Dr. Morelli was just simply given a guess at his 213 F disclosure. Excuse me, if I may, I think the argument, it appears to be that the letters and the opinions were really more a difference of opinion of what should or could have been done versus any type of definitive statement that it was, it was a breach of the standard of care, that it was below that threshold. That appears to me what the argument is being, and that there was not testimony as to what, um, you know, where the deviation from the standard of care was. It was just a difference of opinion as to what could or should have been done, and so that it didn't meet that expert testimony threshold. And again, there wasn't an affidavit to that effect, um, produced by the defendant. What was stated, what was stated in his brief, throughout his brief, was what I sort of gave to you, was that he was taking the word should and then using that to imply that the doctor was simply guessing as to what the standard of care was. What I stated to the lower court below and to what I can state to you now is that that's not what was stated. Dr. Borelli stated that he would give his opinion that since the plaintiff had no history of knee illness or even knee problems, a complete and extensive physical exam should have been performed, and that exam should have included observation of the knee, palpitation of the knee, a range of motion test, neurovascular test, stress test of ligaments. And this was also brought out by Dr. Brazel in his testimony whenever he was the post. He pretty much said the same thing, that in a case like this, you want to give a history of the knee which included the exams that I had just mentioned. Counselor, can I follow up then with the question? I take it then your position is that if the doctor simply says that another doctor should have, that that's a comment on the standard of care and a violation thereof? So, I can answer that in two ways. One, the word should, again, is being taken out of context here. I do believe that he was saying something that was obligated on part of the doctor that was performing the exam. Well, okay, then let's assume what you're saying is right. Did the doctor say anywhere that there was a violation of the standard of care or that this treatment fell below a reasonable standard of care? Was there any term? I understand that you say that they keep focusing on should, but I guess my problem is, did he use any word other than should or any combination of words other than should? I believe in response to, in response specifically to the elevation of the knee when that was done, I believe the doctor stated in his, in both in the complaint and in the 213F disclosure that it is standard that the knee be immobilized. But again, that's kind of getting around the question. The question is, did he specifically say, because doctors may differ. Another doctor may come up and say, here's what you should do, but that's really not the standard. The standard is, did he say what was done here was either improper, that it violated the standard of care? You see where we're coming from? It seems like it's more vague than you would like it to be. I mean, I just didn't, I just, we respectfully disagree that that is vague. Again, he's saying, he's saying the reason that he reached the conclusion that a more extensive exam should have been performed by the doctor was because again, the history of the patient is that he has no history of knee problems and no history of knee ailments. He then goes in specific detail about the, the stress, the specific exams that he would have liked to have seen in that 213F disclosure. And I believe he does this also in the complaint as well. The same, pretty much the same exams that he would have done, Dr. Bezos would say that he would have done the same exams in his 213F, I mean, his deposition. Also, he did acknowledge in his deposition that the doctor in this case did not perform those exams. So, I don't necessarily see that there's an issue as to my expert being vague when pretty much everybody's saying the same thing in regards to an issue exam. Okay. Thank you. Counselor, if I may, while we're talking about the summary judgment, the motion for summary judgment, appellant's response to Dr. Lashard's motion for summary judgment, did it comply with rule 191 or do you believe that compliance was not necessary? And if your argument is that it wasn't necessary, what's your support for that position? So, the argument that it wasn't necessary is, again, I understood the motion to be complaining that the 213F disclosure was just simply too vague. No affidavit was produced by the defendant, no sort of additional facts were added to the case. Normally, in a case, and I think this is brought out in Pruitt v. Hess, a case that's cited by both defendants, normally if a defendant adds to the case or adds facts to the case, then there's the obligation on the part of the plaintiff to produce an affidavit. That's not what happened here. He simply just took the F3 disclosure and criticized the F3 disclosure, and what I stated was, well, I'm just simply disagreeing with that, his criticism. No additional facts were added by either party. The complaint still stated what it stated, the factual allegations of the complaint were never questioned, the standard of care in the complaint was never questioned, the breach that we allowed, that we alleged in the complaint was never questioned. So, the complaint's pretty much still valid pleading before the court, and it had never really been challenged at any point, not in the lower court and not now. So, there was no obligation to reproduce an affidavit in compliance with one. Well, aren't the 213 supposed to be sworn to by your client and or the party answering them? And yours were not, isn't that correct? They were not. I'm not quite sure that the rule asks for the 213 F disclosures to be sworn. It does. I'm reading the rule. The party shall serve a sworn answer or an objection. It's right there in the rule. Okay. I'll have to go take a look at that. Generally, whenever I've done 213 F disclosures, they have not been sworn to, and I don't believe that any of the claimants in this case that their 213 F disclosures were sworn to either. But that's not what is that issue. It's your 213s, correct? Well, and Dr. Lockhart's motion for summary judgment, he does rely on his 213 F disclosures as well, and they're cited in his brief. Oh, the signature has always been sufficient. Now, whether or not there's other language that should have been added to it, I don't know. I can't speak to them. In addition to the saying that the disclosure was vague, the defendants also stated, quote, nowhere in the disclosures does it state, does the word approximate cause appear, does the phrase standard of care appear, and that's in page 15 of his brief and then page 50 of the report for proceedings. I think the courts have always stated that sort of restating a rule or just a formulaic expression of a rule is not necessarily going to get you over the hump as far as how you present an argument to the court. I thought that even though the doctor did not necessarily explicitly state the probable cause, what he stated was that since the doctor had failed to perform the necessary exam, that plaintiff not only had been exposed to further injury, but was exposed to unnecessary severe pain. That's an injury, and that's tying the injury to the negligent act. Just because the words approximate cause don't appear there don't necessarily mean that he's not demonstrating that there's a causal link between the negligent act and the negligent instruction from the doctor and the eventual unnecessary pain and suffering that plaintiff actually did suffer. I don't necessarily take the rule, and that was not a case cited that said that in order to demonstrate approximate cause or the standard of care that those phrases or those words need to be exposed, as long as the demonstration is there. I kind of feel like as I've stated before that that was the case. Counsel, if I could ask a question with regards to nurse Scott. You alleged that nurse Scott failed to implement minimal weight-bearing orders and provide plaintiff with crutches, and that those actions would pertain to communications between medical professionals. What in the record demonstrates that Dr. Borelli could be qualified to establish the standard of care with respect to nurses? So, if I'm understanding your... Can you rephrase your question? I'm not thinking... I guess when we're talking about that, you look at the Wingo exception, and you argue that. And so, my question is, as it relates to Dr. Borelli testifying as to a standard of care that had allegedly been violated or breached by nurse Scott. So, in regards to that, what we were saying specifically was in regards to nurse Scott not implementing the... Not nurse Scott and Dr. Lockhart not instituting the three weeks of physical therapy that were ordered by the orthopedic specialist. And I think if you look at Wingo, there's specific language in there that states that since that they were going to allow the doctor to opine as to what he would have liked to have heard from the nurse in regards to the condition of a patient, because she was at that point not being exposed to a higher level of... A higher standard of care through that opining or that opinion from the doctor. I think here's the same situation. Just Dr. Borelli saying that nurse Scott did not implement... And nurse Scott and Dr. Lockhart did not implement the three weeks of physical therapy that were ordered and simply saying that that is a negligent act and that it caused unnecessary pain and suffering. I don't know that that's the type of opinion that would expose nurse Scott to a higher standard of care. Are you suggesting that physical therapy wasn't received by your client? So, the record is pretty much clear that it was not. I think he was... In order to have three weeks of physical therapy, he only got three sessions within a course of about three or four weeks. And then didn't he testify that it was not beneficial? So, again, he testified... Well, first, I would argue it's not uncommon that in the first two or three sessions of a patient going to physical therapy that they're more complaining about the benefit. One, the limb was injured previously. And then, two, as Dr. Basil has stated, they had not been using the leg. And so, you're going to have some muscle loss and some of the tendons and ligaments in that knee are not going to be as strong as they once were before. So, that in and of itself, I don't think it necessarily proves anything. I would also argue that if that's the reply to him not getting physical therapy, that is a genuine issue of saying that the three weeks of physical therapy wasn't ordered, nor is she saying that he didn't get the three weeks of physical therapy. She's just making an argument that she doesn't think that the three weeks was necessarily needed beyond what was given. Counsel, given where we are with time, if we could switch gears, because on appeal, you do address two separate orders. You're addressing the summary judgment order, and then you're also addressing the trial court's dismissal of counts four and five. That dismissal was without prejudice, correct? It was. I'm sorry? It was, Judge, yes. Okay. And did that dismissal order preclude Mr. Crowder from refiling both claims of medical negligence and ordinary negligence in any way? The order did not. I kind of felt like the court may have an oral argument, because what she had pretty much stipulated at the hearing on the motion to dismiss was that she felt that since there was a doctor-patient relationship, and I didn't allege anything other than a doctor-patient relationship, that the only thing that could move forward was the professional negligence case. So, I took that to, even though it was without prejudice, I kind of took that to mean that under no circumstances would she allow just a common-law negligence, just given the fact that I only alleged a doctor-patient relationship. And there is the case of DeLuna v. St. Elizabeth's Hospital, 147 Illinois 2nd, 57, which held a dismissal without prejudice is not a final judgment for the purposes of jurisdiction under 301. How is this case distinguishable from DeLuna, meaning what would make the court's dismissal without prejudice in this case a final judgment? If there was, I get, I haven't read that case, so I can just speak on knowledge, but if that would be the court's order, then I guess what should have happened and didn't is that I should have asked for another order from the court saying that she was basically entering judgment on a motion to dismiss, granted that was not done here. So, that would be the only way that I can answer that question without reading that case. Thank you. I did want to briefly touch on the sheriff here. I see I only have a minute left. There's a case, it's called Johnson v. Myers, and in that case, the court explicitly goes through all of the things that the jail staff did. They helped him in and out of bed, they helped him to the shower, they helped him elevate his leg, and they did all, they gave him, made sure he got his medication. They did all of these things that were in compliance with what the medical staff had asked for. And in this case, the only thing that the county is alleging is that they put him on sick haul. We're alleging, given the fact that once when he was brought in, the arresting officer was concerned about his leg and his limping, and then stayed to ask again about his limping, and then was told for some odd reason that he was no longer limping, even though everybody in the case agrees that he was limping and never stopped, that something more was required at that point, rather than just placing him on sick haul, that there was a willful and wanting decision not to administer health care. Thank you. Thank you, counsel. You will have time in rebuttal. And my understanding is the appellee, each attorney is splitting that time 10 minutes apiece, if that is correct. I will let the counsel who's going first start. Thank you, Your Honor. That is our agreement. We're going to split that, and I'm not sure I will use the full 10 minutes even. On behalf of Dr. Lockhart, I have just a couple of issues, and I think we can deal with them pretty briefly. First, I think Your Honor is correct on the motion to dismiss, and more to the point, the allegations arise from medical care and belong in a malpractice count. They were repled in the malpractice count in the amended complaint, and that's what we move forward with on the motion for summary judgment. I did want to raise an objection, because plaintiff's counsel has referred a number of times to Dr. Basil's testimony. His deposition was not of record below, although it was included in the appendix. I do not believe that it's properly included in the appendix, because it was not part of the record below. Just then, proceeding to the issues on the motion for summary judgment, we moved for summary judgment on the merits relying upon Dr. Lockhart's testimony that he believed he did not violate the standard of care. Plaintiff did not provide any admissible testimony or affidavit in opposition to that, so plaintiff did not provide any evidence that would create a question of fact with respect to Dr. Lockhart's treatment or violation of standard of care, because there was no affidavit or deposition testimony from his expert, and so Dr. Lockhart's opinions and testimony are therefore uncontroverted. Even if we moved along and considered the disclosure from Dr. Borelli, his statements appear to be more along the lines of his personal opinions or practice, rather than clearly indicating a violation of the standard of care, and I think it's particularly noteworthy in this circumstance, because Dr. Borelli is an orthopedic surgeon, and he's proposed to testify against an internal medicine specialist, and I think he needs to be clear that the standard of care requires that certain things be done, and that Dr. Lockhart did not perform those, and his disclosure does not do that. Even more to the point, it really fails on the approximate cause issue. All he says regarding a causation is that Dr. Lockhart's actions exposed Mr. Crowder to further injury and unnecessary pain. Nowhere does he say that Mr. Crowder suffered further injury and pain because of Dr. Lockhart's actions, so that disclosure, I think, really clearly fails on the approximate cause. There is no testimony from anyone that Mr. Crowder suffered some additional injury or pain because of the actions of the defendants. I don't believe there's any opinions from any of the physicians that different or physical therapy or more physical therapy would have made a difference. What Dr. Borelli would like to have seen or might have done differently himself is not the standard of care. The standard of care is the standard by which professionals in that area are measured, and he is not to set forth that standard or a violation of it. Unless your honors have questions, I'm happy to yield the rest of my time to the co-defendants. Counsel, if I may, if we can circle back just for a moment to the dismissal without prejudice in this case. When it comes to the question that I asked Apollon's counsel as to refiling, he suggested that some of the court's commentary alluded to the fact that counsel would not be permitted, if you will, to file a common law negligence claim as well upon refiling. Would you like to speak to that issue? I don't have a recollection of Judge Foley's comments on that directly, but I would just point to the general rule that the filing of an amended complaint supersedes the original complaint, and the amended complaint asserted only a malpractice claim. Thank you. Seeing no further questions from the other justices, counsel, we can proceed with your argument. Thank you, your honor. Good afternoon, and may it please the court. My name is Andrew Gersh, and I represent, again, the county defendants, namely the county, the sheriff, and nurse Suzanne Scott. Counsel, I have lost sound from you. Can you still not hear me? I can hear him. Can you hear me, Justice Leonard? I can hear him also. Okay, now I can hear all of you, so maybe that was on my end. Okay. All right, so everybody can hear me then? Yes, thank you. You may proceed. Thank you, your honor. So, again, this is obviously, again, a negligence action filed by the plaintiff against defendants. I don't want to, you know, rehash all the issues as already argued by Dr. Lockhart here today, but I do want to briefly touch on the points and also discuss briefly some of the additional arguments that relate as to my clients. But I guess starting very briefly, again, with the motion to dismiss, first of all, I would, you know, submit to the court that the counts were, in fact, duplicative regardless of any issue regarding, you know, jurisdiction or what have you. Because, again, with the need case cited there and in our brief, it was a different, slightly different fact pattern in the sense it was dealing with a negligence and a breach of fiduciary duty count. But it did, you know, make a clear statement that, you know, pleading in the alternative is allowed, but duplicative pleadings are not. And that is what, you know, the basis of the trial court here was that essentially it was two counts seeking the similar relief and, therefore, the dismissal of those counts were proper in this case. Now moving on to the summary judgment, starting with Nurse Scott in this matter. Again, I would agree with the other defendant's counsel that the disclosures here were not proper and not in compliance with Rule 191. They were not sworn, and the 213F disclosures are not sufficient, even if admitted, to create an issue of fact as to survive summary judgment at this stage. Again, here as it relates to Nurse Scott, you know, we had a discussion earlier about the Wingo exception, and I would submit that the Wingo exception is a very narrow exception, as this court well knows. In Wingo, it was a testimony regarding what a nurse is supposed to say to the doctor in between patient visits, you know, what happened, you know, I saw the patient a month ago. I'm seeing him today. What's the update since then? That's a very different type of communication than what's being argued here. Again, Wingo was not a, any communication doesn't need an expert. It was only that specific area of communication. And here, it's clear that in order to create any issue of fact to survive summary judgment that an expert of, you know, a registered nurse would have to have been disclosed, which was not done here by the plaintiff. So, regardless of the disclosures coming in or not under Rule 191, regardless, they do not meet the Wingo exception, and therefore, summary judgment is proper under that basis. And then, moving on from there, even further, obviously, as county employees, Nurse Scott enjoys immunity under the Tort Immunity Act, to the extent that plaintiff tries to claim that, you know, she didn't do a proper exam and she's, she enjoys immunity to the extent that there was some sort of mixed diagnosis, even though Nurse obviously cannot render a diagnosis herself, there would be immunity there as well. It's only a failure to implement a correct diagnosis that's actionable under the Tort Immunity Act. Here, there is no evidence showing any negligence on behalf of Nurse Scott. Namely, again, as we already stated, that plaintiff's experts in this matter do not testify regarding a standard of care and a deviation therefrom. What they essentially did is say, as we talked about earlier, should, could, it's not a clear testimony regarding a breach and a deviation from that standard of care. And there's no evidence in the record here to suggest that Nurse Scott was, in fact, negligent in any way. Additionally, there's a brief comment on this. I believe that Section 4105 also applies to Nurse Scott that immunizes the failure of a public employee to furnish or obtain medical care. There's no limitation within that section that limits that to only correctional officers. The legislator, when putting forward that section, used the term public employee. I mean, I think that speaks to the clear intent that they could have used officer, correctional officer, et cetera, but they did not. And therefore, I believe that section applies as well. And the trial court also alluded to that in their opinion, and I would agree with that point. So, regardless here, summary judgment, therefore, is properly granted in favor of Nurse Scott and therein through the Tort Immunity Act, also the county, because if Nurse Scott is not liable, neither is the county in this case. And then moving lastly to summary judgment in favor of the sheriff, again, Section 4105 directly applies to the scenario here. There is no willful or wanton conduct alleged or shown in the record in this matter. Plaintiff earlier in argument, you know, alluded to the Johnson case and, you know, essentially saying that anything less than that is willful or wanton conduct. And I would submit that that is not the rule. In fact, in the Moy case, I think it also cited by the plaintiff is pretty similar to the facts here, but the record shows here that the sheriff's received the defendant, they put him on sick call and he was seen. None of the medical experts in this case rendered any worry or concern with the timeframe of when he first saw, you know, Dr. Lockhart, for example. So, there's no evidence here to show any willful or wanton conduct on behalf of any employee. In fact, no specific sheriff's employee is even identified as creating any willful or wanton conduct in this matter. If I may, just to follow up on that. So, your statement is that there's no evidence that suggested any individual in the McLean County Sheriff's consciously disregarded plaintiff's request for assistance following his injuries. Is that accurate? That would be accurate, Your Honor. All right. Thank you. Thank you. But just to, I guess, to summarize again for the court, summary judgment here was properly granted against all the defendants. There's just no evidence to rebut the evidence presented by the defendants in this matter. As the court well knows, we're here on the summary judgment stage. We're not here on a motion to dismiss. For example, this is as the courts of our state have called it, the quote, you know, put up or shut up stage of the litigation, right? And here at this point, the defendants here met their burden of production, whereas the plaintiff was not able to provide any evidence to defeat summary judgment. And as I already stated, the motion to dismiss was properly granted, especially without prejudice. And the plaintiff had no allegations available to allege any negligence that does not fall within those professional negligence complaints. And for those reasons, I would ask that the court affirm all the rulings below by the trial court. Thank you. Thank you. Counsel, your rebuttal argument, please. Counsel, I believe you're muted. I apologize for that. So, this is what the court stated at the oral argument for the motion to dismiss. Count four alleges professional negligence, and this is at R6 just for anybody who wants to look at this. Count four alleges professional negligence. Count five alleges ordinary negligence. The count concurs with defendant's assessment. The only allegations as currently clear arise from the relationship of a physician to a patient. The only based upon the current complaint, the only duty of care owed by Dr. Lockhart would be within the context of a patient-physician relationship. There's no other relationship that is alleged here. So, that's why I took that to be she was foreclosing a common law claim because she was basically saying that there was only a doctor-patient relationship here. In regards to 401.5, I did not get to that in my initial assessment. That law states that the person is in the custody of the person that is supposed to furnish care. What the nurse Scott says in her brief is that since she is an employee of the jail and she's working inside of the jail, that Mr. Crowder, who was a detainee in the jail, can deem to be in her custody. That's not how that works. She is a medical person that's working in the medical hospital. He also refers to that as a correctional activity because it occurs inside the jail. Healthcare is not a correctional activity. It has nothing to do with the operation of the jail. Furthermore, if you're going to read that 401.5 exception into 106D, which we're claiming here in our report, then you would also have to read it into 106A and 106B and 106C. The court has deemed those immunities to be absolute. So, from a statutory construction part, it doesn't really make sense to read 401.5 into 106D and then no part of the other part of that statute. It also doesn't make sense to claim that Mr. Crowder was in the custody of the nurse who was working at the jail. In regards to the 213F disclosure, I'll go back to that. At no point in time, again, did any defendant add anything to the case or any facts that were added to the case. The only thing that they did was complain that the F3 disclosure was vague because it had used the word should. As I tried to explain in my reply brief, the word should can mean either probability or it can state an obligation. I think I know that Dr. Varela was stating an obligation in there. In regards to probable cause, to approximate cause, excuse me, Dr. Varela, this is what it states in his F3 disclosure. Dr. Varela will give further opinion that by not properly examining patient, plaintiff, and or failure to correctly diagnose plaintiff in the proper diagnosis, the proper diagnosis was too late. Numerous times medical staff failed to follow doctor's orders and or plaintiff's treatment. Therefore, because medical staff, including named defendants, failed to properly examine and diagnose plaintiff and also failed to properly execute doctor's orders, plaintiff suffered severe and unnecessary pain and suffering and was exposed to further injury. Again, I'll grant you the word approximate cause is not there, but he is linking the negligent acts, failure to diagnose, not following doctor's orders, failure to examine, and he's linking that to the eventual harm that takes place. Furthermore, in regards to the elevation of the knee, again, this is something that was agreed to by both Dr. Varela and Dr. Basel. Just as a side note, in my response to Dr. Varela's summary judgment below, I did reference Dr. Basel's testimony, and it was brought up at the oral argument, so it was in the record before the court. But again, he's stating the knee needs to be at least above the heart in order to get proper elevation. That was stated by my doctor. That was stated by Dr. Basel. There's no disagreement there. There's really no disagreement that when they told him to be supported. Dr. Varela states this. Dr. Basel states this. These are none of the, again, when I say that they're not adding any facts, not only are they adding any facts, they're nearly not even disputing the things that he said. That stuff was also confirmed by Dr. Basel. Thank you, counsel. Your time has expired. The court will take this matter under advisement, and this court stands in recess.